# **EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENMANUEL FERNANDEZ DE JESUS and HENRY DE JESUS DEL CARMEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>INCINIA CONTRACTING INC., INCINIA CORPORATION, ZORAN ZORIC, and DUSAN ZORIC a/k/a "SEAN ZORIC,"<br><br>Defendants. | No. 17 Civ. 5733 (KHP) |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between, on the one hand, Enmanuel Fernandez De Jesus and Henry De Jesus Del Carmen (collectively, the "Named Plaintiffs"), individually and on behalf of a collective they seek to represent (collectively, the "Putative Collective Members") (the Named Plaintiffs, opt-in Plaintiffs Marlon Garcia and Jhony Cantos Miranda, and the Putative Collective Members are collectively referred to as "Plaintiffs") and, on the other hand, Incinia Contracting Inc., Incinia Corporation, Zoran Zoric, and Dusan Zoric a/k/a "Sean Zoric" (collectively, "Defendants") (Plaintiffs and Defendants are collectively referred to as the "Parties").

**1.   RECITALS AND BACKGROUND**

**WHEREAS,** on July 28, 2017, Named Plaintiffs filed the instant action against Defendants alleging, *inter alia*, claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law ("NYLL") for the alleged failure to pay overtime compensation, and provide annual wage notices and accurate wage statements to Plaintiffs (the "Claims");

**WHEREAS,** following the Parties' participation in extensive formal discovery and a full-day settlement meeting held at Defendants' counsel's office, the Parties reached a settlement resulting in this Agreement;

**WHEREAS,** the Parties have agreed to settle the Litigation (as defined below) on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

**WHEREAS**, Defendants deny all of the allegations made by Plaintiffs, and deny any and all liability and damages to anyone with respect to the Claims and the facts underlying the Claims;

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of this Litigation, as defined below, on the following terms and conditions.

## 2. DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

2.1 **Agreement.** "Agreement" means this Settlement Agreement and Release.

2.2 **Approval Order.** "Approval Order" means the Order of Dismissal with Prejudice approving the terms and conditions of this Agreement.

2.3 **Bar Date.** "Bar Date" shall mean the last date by which a Putative Collective Member must mail and post-mark a Claim Form in order to participate in the settlement, which will be forty-five (45) days from the initial date the first Notice Packet and Claim Forms are mailed by the Settlement Claims Administrator.

2.4 **Claims.** "Claims" has the meaning set forth above in the recitals.

2.5 **Claim Form.** "Claim Form" shall mean the form that the Putative Collective Members must sign and return post-marked by the Bar Date. A Claim Form is attached hereto as **Exhibit A**.

2.6 **Company.** The "Company" shall mean Incinia Contracting Inc.

2.7 **Court.** "Court" means the United States District Court for the Southern District of New York.

2.8 **Defendants.** "Defendants" means Incinia Contracting Inc., Incinia Corporation, Zoran Zoric, Dusan Zoric a/k/a "Sean Zoric," and Milena Zoric, jointly and severally. Each of the Defendants may individually be referred to as a "Defendant."

2.9 **Defendants' Counsel.** "Defendants' Counsel" means Andrew J. Urgenson, Esq., Oved & Oved LLP, 401 Greenwich Street, New York, New York 10013.

2.10 **Employer Payroll Taxes.** "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment compensation in this Agreement, including Federal Insurance Contributions Act (FICA), Federal Unemployment Tax (FUTA), and State Unemployment Tax (SUTA) obligations.

2.11 **FLSA.** "FLSA" means the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, as set forth above in the recitals, including all of its amendments and interpretive regulations.

2.12 **Gross Settlement Fund or GSF.** "Gross Settlement Fund" or "GSF" means Four Hundred Thousand Eighty-Eight Dollars and Zero Cents ($488,000.00). The GSF is the maximum amount Defendants shall pay to settle the Litigation with the Putative Collective Members, as hereinafter defined. Notwithstanding the foregoing, the GSF does not include the Company's share of employer payroll taxes, which the Company shall pay separately from the GSF.

2.13 **Hourly Employees.** "Hourly Employees" means all asbestos handlers, supervisors, and other similarly situated hourly-paid employees who are or were employed by Defendants during the Relevant Statutory Period.

2.14 **Individual Settlement Award.** "Individual Settlement Award" means a Putative Collective Members' individual proportionate share of the Net Settlement Fund in accordance with Section 4.5 below.

2.15 **Litigation.** "Litigation" means the above-captioned matter titled *Fernandez De Jesus v. Incinia Contracting Inc.*, No. 17 Civ. 5733 (KHP), currently pending in the Court.

2.16 **Named Plaintiffs.** "Named Plaintiffs" means Enmanuel Fernandez De Jesus and Henry De Jesus Del Carmen, as defined above in the recitals.

2.17 **Net Settlement Fund.** "Net Settlement Fund" means the Gross Settlement Fund less: (1) the Settlement Claims Administrator's fees and costs; (2) the one-third of the GSF (*i.e.*, $162,666.67) allocated to Plaintiffs' Counsel for attorneys' fees; (3) reimbursement of costs and expenses (not to exceed $1,000.00) incurred by Plaintiffs' Counsel; and (4) the Court-approved Service Payments to the Named Plaintiffs and the Opt-in Plaintiffs.

2.18 **Notice Packet.** "Notice Packet" refers collectively to the Notice of Settlement and Claim Form to be mailed to Putative Collective Members of the settlement by the Settlement Claims Administrator. The purpose of the Notice Packet is to inform Putative Collective Members of the settlement, their estimated pro-rata settlement share, the material provisions of this Agreement, the procedure for submitting a Claim Form, and their rights with respect to this Agreement.

2.19 **NYLL.** "NYLL" refers to the New York Labor Law, as set forth above in the recitals, including Articles 6 and 19 and the Wage Theft Prevention Act, as well as its amendments and interpretive regulations.

2.20 **Opt-in Plaintiffs.** "Opt-in Plaintiffs" means Marlon Garcia and Jhony Cantos Miranda.

2.21 **Participating Collective Members.** "Participating Collective Members" are all Putative Collective Members who timely return a Claim Form. By virtue of signing this Agreement, the Named Plaintiffs will not be required to submit a Claim Form and will be deemed a Participating Collective Member.

2.22 **Plaintiffs.** "Plaintiffs" means the Named Plaintiffs, the Opt-in Plaintiffs, and the Putative Collective Members collectively.

2.23 **Plaintiffs' Counsel.** "Plaintiffs' Counsel" means Joseph A. Fitapelli and Arsenio Rodriguez, Fitapelli & Schaffer, LLP, 28 Liberty Street, 30th Floor, New York, New York 10005 – (212) 300-0375, and Louis Pechman and Gianfranco J. Cuadra, Pechman Law Group PLLC, 488 Madison Avenue, 17th Floor, New York, New York 10022 – (212) 583-9500.

2.24 **Putative Collective Members.** "Putative Collective Members" means the Named Plaintiffs, Opt-in Plaintiffs Marlon Garcia and Jhony Cantos Miranda, and all Hourly Employees. The GSF shall cover up to 134 Putative Collective Members.

2.25 **Qualified Settlement Fund or QSF.** "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator.

2.26 **Released Claims.** "Released Claims" means all Federal and New York wage-and-hour and notice claims (with the exception of retaliation claims) under the FLSA and the NYLL as well as statutory claims for failure to provide annual wage notices and accurate wage statements under NYLL§ 195 during the Relevant Statutory Period.

2.27 **Released Parties.** "Released Parties" means Incinia Contracting Inc., Incinia Corporation, Zoran Zoric, Dusan Zoric a/k/a "Sean Zoric," Milena Zoric, and each of their heirs, successors, assigns, present and former officers, agents, employees, directors, representatives, supervisors and attorneys.

2.28 **Relevant Statutory Period.** "Relevant Statutory Period" means July 27, 2011 through March 28, 2018.

2.29 **Service Payments.** "Service Payments" means the five thousand dollars ($5,000.00) to be paid to Named Plaintiff Enmanuel Fernandez De Jesus, five thousand dollars ($5,000.00) to be paid to Named Plaintiff Henry De Jesus Del Carmen, two thousand dollars ($2,000.00) to be paid to Opt-in Plaintiff Marlon Garcia, and two thousand dollars ($2,000.00) to be paid to Opt-in Plaintiff Jhony Cantos Miranda.

2.30 **Settlement Claims Administrator.** "Settlement Claims Administrator" means Rust Consulting, Inc.

2.31 **Settlement Check Cashing Period.** "Settlement Check Cashing Period" has the meaning set forth below in Section 3.5(H).

2.32 **Settlement Checks.** "Settlement Checks" means the checks issued by the Settlement Claims Administrator to Participating Collective Members for their share of the Net Settlement Fund calculated in accordance with this Agreement.

4

3. **INITIAL PROCEDURAL ISSUES**

3.1 **Binding Agreement.** This Agreement is a binding agreement and contains all material terms.

3.2 **Retention and Responsibilities of the Settlement Claims Administrator.**

(A) The Settlement Claims Administrator shall be responsible for, among other things, calculating settlement awards, preparing, printing, and mailing the Notice Packets along with return postage pre-paid envelopes as directed by the Court; mailing one reminder postcard; making two (2) commercially reasonable trace for new addresses for Putative Collective Members whose Notice Packets are returned as undeliverable with no forwarding address; determining the amount of payments due to each Putative Collective Members in accordance with this Agreement, along with the amount of all payroll tax deductions to be withheld; receiving and logging Claim Forms returned; providing weekly status reports to Defendants' Counsel and Plaintiffs' Counsel regarding the status of the mailing of the Notice Packets, the claims administration process, and the identity and number of Participating Collective Members; cutting and mailing Settlement Checks to Participating Collective Members; cutting and mailing checks for Court-approved Service Payments to the Named Plaintiffs and Opt-in Plaintiffs; printing and mailing checks for Court-approved attorneys' fees and costs to Plaintiffs' Counsel; printing and providing W-2s and 1099 forms as required under this Agreement and applicable law and for such other tasks set forth in this Agreement or as to which the Parties mutually agree.

(B) The Settlement Claims Administrator shall also establish, control, and maintain the QSF according to the terms of this Agreement, and be responsible for filing all required tax returns for the QSF and paying any taxes due.

(C) The Settlement Claims Administrator's fees shall not be in excess of Ten Thousand Dollars and Zero Cents ($10,000.00) and shall come out of the GSF and be paid from the QSF upon completion of all duties required to be performed by the Settlement Claims Administrator under the terms of this Agreement and any Court orders.

(D) The Parties agree to cooperate with the Settlement Claims Administrator, and to provide accurate information necessary to send the Notice Packets, calculate Individual Settlement Payments, and send Settlement Checks in accordance with the terms of this Agreement. The Parties shall have equal access to all information related to the administration of the Agreement.

**3.3** **Approval Order and Dismissal.**

    (A)    On or before May 30, 2018, Plaintiffs shall submit to the Court all papers necessary to obtain approval of this Settlement (hereinafter, the "Approval Motion").

    (B)    If the Court fails to enter an Approval Order, the Parties jointly agree to: (1) seek reconsideration or appellate review of the Court's decision; and/or (2) renegotiate the settlement and seek Court approval of the renegotiated settlement.

    (C)    If any reconsideration and/or appellate review is denied, or if a mutually agreed-upon settlement is not approved, the Litigation will proceed as if no settlement had been attempted.

**3.4** **Provision of Information to Settlement Claims Administrator.**

    (A)    Within ten (10) days of the Court's entry of the Approval Order, Defendants will provide the Settlement Claims Administrator and Plaintiffs' Counsel with a list, in electronic form, of all Putative Collective Members containing the following information (to the extent such information is in Defendants' possession): name, last known address, last known phone number(s), last known email address(es), social security number, and dates of employment within the Relevant Statutory Period.

**3.5** **Notice Packet, Settlement Checks, Releases and Settlement Check Cashing Period.**

    (A)    Within twenty (20) days following the Court's Approval Order, the Settlement Claims Administrator shall issue each Putative Collective Member a Notice Packet and Claim Form in English and Spanish with a return pre-addressed envelope with postage prepaid. The Notice shall advise each Putative Collective Member of his or her estimated Individual Settlement Award. The Claim Form shall also contain the following language:

        (1)    **FINAL RELEASE OF CLAIMS:**

            By signing and returning this Claim Form, I fully waive, release and forever discharge any right to assert, file, initiate, participate, and/or commence any and all Federal and New York wage-and-hour claims, complaints, causes of action, lawsuits, fees, judgments, benefits, debts, controversies, damages, and/or demands of any kind, nature, and character which concern violations or allegations of unpaid compensation (including minimum wage and overtime, the failure to provide annual wage notices and/or accurate wage statements, late payment, interest, liquidated damages, attorney fees and costs, civil penalties, and/or statutory penalties) (with the exception of retaliation claims) purportedly owed by Defendants Incinia Contracting Inc., Incinia

6

        Corporation, Zoran Zoric, and Dusan Zoric a/k/a "Sean Zoric" and Milena Zoric, and each of their heirs, successors, assigns, present and former officers, agents, employees, directors, representatives, supervisors and attorneys, under the Fair Labor Standards Act, the New York Labor Law, and and/or any other law, regulation or ordinance regulating the payment of wages from July 27, 2011 through March 28, 2018.

        _____
        Signature

(B)    Prior to the mailing of the Notice Packets, the Settlement Claims Administrator shall attempt to confirm the accuracy of the addresses through the United States Post Office's National Change of Address database or other commercially reasonable means and shall mail the Notice Packet to any updated address obtained therefrom. The Settlement Claims Administrator will also send one (1) reminder postcard thirty (30) days after the initial mailing of the Notice Packet and Claim Form.

(C)    The Settlement Claims Administrator shall seek to obtain the correct address of any Putative Collective Members for whom a Notice Packet is returned as undeliverable. The Settlement Claims Administrator will notify Plaintiffs' Counsel and Defendants' Counsel of any Notice Packet sent to a Putative Collective Member that is returned as undeliverable after mailing, and thereafter perform up to two skip traces using the information provided by Defendants, such as social security numbers, to ascertain correct mailing information to effect a second mailing. The Settlement Claims Administrator shall have seven (7) days from the date that any Notice Packet is returned undeliverable to re-mail the Notice Packet to the correct address. In the event of such re-mailing, the Claim Form must be postmarked or received by email or facsimile by the Settlement Claims Administrator on or before the later of thirty (30) days from the date of re-mailing or the Bar Date.

(D)    In the event any Claim Form is timely submitted, but does not contain a signature or sufficient information to identify the Putative Collective Member, the Settlement Claims Administrator shall, within five (5) days of the Settlement Claim Administrator's receipt of such Claim Form, provide the Putative Collective Member with a letter requesting the information that was not provided and giving the Putative Collective Member until the later of ten (10) days from the date of mailing of said letter or the Bar Date to provide the requested information ("Cure Request Letter"). To be timely, the revised Claim Form with the signature or sufficient identifying information must be postmarked or received by email or facsimile by the Settlement Claims Administrator on or before the later of ten (10) days of the date that the Cure Request Letter was mailed or the Bar Date.

7

(E) In the event of any dispute over a Putative Collective Member's dates of employment and/or the late submission of any Claim Form, the Parties will meet and confer in good faith in an effort to resolve the dispute, and if the Parties are unable to reach an agreement, the Settlement Claims Administrator shall decide the dispute in accordance of the terms of this Agreement, assuming Defendants' records to be valid, and its decision will be final. In the event that a Claim Form is received within ten (10) days of the Bar Date because of a Putative Collective Member's military service or hospitalization, the Settlement Claims Administrator may accept it.

(F) Putative Collective Members have until the Bar Date (forty-five (45) days from the initial date the Notice Packet and Claim Forms are mailed) to return completed Claim Forms to the Settlement Claims Administrator and become Participating Collective Members entitled to receive their share of the Net Settlement Fund. Claim Forms may be mailed, faxed, e-mailed, postmarked, or otherwise received by the Settlement Claims Administrator by the Bar Date shall be considered timely.

(G) Within ten (10) days after the Bar Date, the Settlement Claims Administrator shall: (a) provide to Defendants' Counsel and Plaintiffs' Counsel a list of Participating Collective Members and shall provide electronic copies of all timely received, executed, and completed Claim Forms; and (b) provide to Defendants' Counsel the total amount due to the Participating Collective Members. In addition, copies of all timely received, executed, and completed Claim Forms shall be provided to Plaintiffs' Counsel and Defendants' Counsel.

(H) The end of the time period for Participating Collective Members to endorse and deposit their Settlement Check shall be one hundred twenty (120) days after the day on which the Settlement Claims Administrator mailed a Settlement Check to a Participating Collective Member ("Settlement Check Cashing Period"). The Settlement Claims Administrator will, within ten (10) days after the last day on which it mails the last Settlement Check to any Participating Collective Member, notify Plaintiffs' Counsel and Defendants' Counsel by email of the precise date of the end of the Settlement Check Cashing Period.

(I) After the expiration of one hundred twenty (120) days after the last Settlement Check is mailed to a Participating Collective Member, the Settlement Claims Administrator shall provide Defendants with a signed copy of each Settlement Check that has been cashed by a Participating Collective Member, redacting any bank account information, and the Settlement Claims Administrator will void all outstanding checks and return such funds to Defendants.

(J) After the expiration of one hundred twenty (120) days after the last Settlement Check is mailed to a Participating Collective Member, any check not cashed shall be void and the uncashed funds will revert and be paid back to Defendants

Settlement Claims Administrator, together with any and all other remaining funds in the GSF, within five (5) business days.

## 4. SETTLEMENT TERMS

### 4.1 Gross Settlement Fund and Funding of Qualified Settlement Fund.

(A) Defendants agree to pay a maximum Gross Settlement Fund of Four Hundred Eighty-Eight Thousand Dollars and Zero Cents ($488,000.00), which shall fully resolve and satisfy any claim for attorneys' fees, expenses and costs approved by the Court, any and all amounts to be paid to Participating Collective Members, any Court-approved Service Payments, and the Settlement Claims Administrator's fees and costs. Defendants will not be required to pay more than Four Hundred Eighty-Eight Thousand Dollars and Zero Cents ($488,000.00) under the terms of this Agreement, with the sole of exception that Defendants shall be responsible for paying, in addition to the GSF, the Defendants' share of any Employer Payroll Taxes for payments made to Participating Collective Members, which are not included in the GSF;

(B) Defendants shall deposit into the Qualified Settlement Fund the total amount of Participating Collective Members' Individual Settlement Awards in accordance with Section 4.5, Court-approved attorneys' fees and costs in accordance with Section 4.2, Court-approved Service Payments in accordance with Section 4.3, and Court-approved Settlement Claims Administrators' fees and costs in accordance with Section 4.4, within thirty (30) days after the expiration of the Bar Date. Defendants will not fund any awards for non-participating Putative Collective Members;

(C) The Settlement Claims Administrator will issue the Settlement Checks and Court-approved Service Payments to Named Plaintiffs, Opt-in Plaintiffs, and Participating Collective Members five (5) days after Defendants fund the QSF in accordance with Section 4.1(B). The Settlement Claims Administrator will issue Court-approved attorneys' fees and costs and Court-approved Settlement Claims Administrator's fees and costs five (5) days after Defendants fund the QSF in accordance with Section 4.1(B).

### 4.2 Settlement Amounts Payable as Attorneys' Fees and Costs.

(A) Plaintiffs' Counsel will petition the Court for an award of attorneys' fees in the amount of one-third of the GSF (*i.e.*, $162,666.67), and for reimbursement of their reasonable out-of-pocket costs and expenses not to exceed One Thousand Dollars ($1,000.00) to be paid from the QSF. Defendants will not contest the amount sought as attorneys' fees and costs.

(B) The settlement is not conditioned upon the Court's approval of Plaintiffs' Counsel's petition for fees and costs. Any reduction in Plaintiffs' Counsel's fees and costs shall automatically be applied to the Net Settlement Amount to be

9

distributed to Putative Collective Members.

**4.3** **Service Payments.**

(A) Named Plaintiffs will apply to the Court to receive Five Thousand Dollars and Zero Cents ($5,000.00) each, and Opt-in Plaintiffs will apply to the Court to receive Two Thousand Dollars and Zero Cents ($2,000.00) each as Service Payments. Defendants will not contest these amounts sought as the Service Payments.

(B) The application for the Service Payments is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Lawsuit. The outcome of the Court's ruling on the application for the Service Payments shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Settlement Approval or for Final Judgment and Dismissal. By virtue of signing this Agreement, the Named Plaintiffs will not be required to submit a Claim Form and will be deemed a Participating Collective Member.

(C) Any reduction in Service Payments shall automatically be applied to the Net Settlement Amount to be distributed to Putative Collective Members.

**4.4** **Settlement Claims Administrator Fees and Costs.**

(A) Plaintiffs' Counsel will petition the Court for approval of the reasonable costs and expenses of the Settlement Claims Administrator from the GSF, which shall not exceed Ten Thousand Dollars and Zero Cents ($10,000.00).

(B) Defendants will not contest the amount sought for the Settlement Claims Administrator's fees and costs. The settlement is not conditioned upon the Court's approval of the Settlement Claims Administrator's fees and costs.

(C) Any reduction in the Claims Administrator Fees and Costs shall automatically be applied to the Net Settlement Amount to be distributed to Putative Collective Members.

**4.5** **Net Settlement Fund and Allocation to Putative Collective Members.**

(A) The allocation to Putative Collective Members will be made from the Net Settlement Fund as defined in Section 2.17 above.

(B) A Putative Collective Member's proportionate share of the Net Settlement Fund will be determined by the Settlement Claims Administrator pursuant to the following formula:

(1) Putative Collective Members shall be allocated one (1) point for each week worked from July 27, 2011 through February 26, 2015.

10

        (2)    Putative Collective Members shall receive one and one-half (1.5) points per each week worked from February 27, 2015 through March 28, 2018 to account for the amendments to the Wage Theft Prevention Act increasing the penalties under NYLL § 195.

(C)    To calculate each Putative Collective Members proportionate share:

        (1)    Add all points for Putative Collective Members together to obtain the "Total Denominator;"

        (2)    Divide the number of points for each Putative Collective Member by the Total Denominator to obtain each Putative Collective Member's "Portion of the Net Settlement Fund."

        (3)    Multiply each Putative Collective Member's Portion of the Net Settlement Fund by the Net Settlement Fund to determine each Putative Collective Member's "Individual Settlement Award."

        (4)    The Settlement Claims Administrator's calculations regarding Putative Collective Member's proportionate shares of the Net Settlement Fund will be final and binding. However, Plaintiffs' Counsel and Defendants' Counsel shall review the calculations and bring any miscalculations or other errors to the attention of the Settlement Claims Administrator for correction.

### 4.6 Tax Characterization.

(A)    Settlement Checks issued to Participating Collective Members shall be allocated as twenty-five percent (25%) W-2 wage payments subject to withholdings, and as seventy-five percent (75%) 1099 non-wage compensation, including interest and penalties. The Service Payments and Plaintiffs' Counsel's fees and costs shall be designated as 1099 payments.

(B)    Participating Collective Members hereby agree to hold harmless, defend, and indemnify Defendants from payments Participating Collective Members may be required to make to any taxing authorities resulting from the payment of the settlement checks and/or Service Payments, the issuance of a form 1099, or as a result of Participating Collective Members' failure to pay any taxes related to said settlement payment, excluding payments Company may be required to make arising from the Company's share of Employer Payroll Taxes.

(C)    The Settlement Claims Administrator is responsible for issuing and filing appropriate forms associated with payments of any amounts to Participating Collective Members, including, but not limited to, issuing the W-2 and 1099 Forms for all amounts paid to the Participating Collective Members and Service Award recipients and for remitting all taxes withheld to the appropriate authorities.

(D)     Defendants' share of Employer Payroll Taxes shall not come out of the Gross Settlement Fund.

## 5. RELEASE

### 5.1 Release of Claims

(A)     Only Participating Collective Members who endorse and negotiate their settlement checks will be deemed to have released claims in accordance with this Section. Participating Collective Members who do not endorse and negotiate their settlement check do not release any claims under this Agreement.

(B)     **Release by Participating Collective Members.** In consideration of the mutual promises and covenants, as well as the payments by Defendants described herein, the sufficiency of which is hereby acknowledged, all Participating Collective Members fully release and forever discharge Defendants from any and all Federal and New York wage-and-hour claims, complaints, causes of action, lawsuits, fees, judgments, benefits, debts, controversies, damages, and/or demands of any kind, nature, and character that concern violations or allegations of unpaid compensation (with the exception of retaliation claims) under the FLSA and the NYLL during the Relevant Statutory Period, including but not limited, to any claims arising out of or relating to Defendants' alleged failure to pay overtime wages or provide annual wage notices and/or accurate wage statements.

## 6. INTERPRETATION, ENFORCEMENT & OTHER PROVISIONS

**6.1**     **Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**6.2**     **No Other Action**: Named Plaintiffs represent and warrant that there are no actions, claims or proceedings filed or pending by or on behalf of any of the Named Plaintiffs against any of the Defendants. In the event that, notwithstanding the representation contained herein, there are other actions, claims or proceedings against any of the Defendants by any of the Plaintiffs, Plaintiffs agree that this Agreement constitutes a withdrawal with prejudice of all other actions, claims or proceedings filed or pending against any of the Defendants, and that Plaintiffs shall not be entitled to any monetary relief as the result of such claims or charges. However, nothing in this paragraph shall pertain to any ongoing claim for Workers' Compensation or claims other than the Released Claims as defined in paragraph 2.26 of this Agreement.

**6.3**     **No Assignment.** Plaintiffs' Counsel and the Named Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

6.4    **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the parties shall be deemed merged into this Agreement.

6.5    **Binding Effect.** This Agreement shall be binding upon the Defendants, Named Plaintiffs, and all Participating Collective Members who endorse and timely return a Claim Form and endorse and negotiate their Settlement Checks.

6.6    **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

6.7    **Citing of the Agreement & No Admission of Wrongdoing.** Except as set forth herein, this Agreement or the resolution of the Claims shall not be cited in any matter or for any purpose against Defendants, unless required by law. This paragraph, however, shall not limit, obstruct, or otherwise impede Participating Collective Members from enforcing this Agreement. Further, Plaintiffs acknowledge that this Agreement does not constitute an admission by Defendants of any wrongful action or violation of any federal or state statute or common law rights, or an admission by Defendants that Plaintiffs' claims have merit. In fact, Participating Collective Members acknowledge that Defendants explicitly refute and deny any claims of wrongdoing.

6.8    **Captions.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

6.9    **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

6.10   **Blue Penciling.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

6.11   **Governing Law.** This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of the State of New York, without regard to choice of law or conflict of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

6.12   **Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement

contemplated thereby. The Court shall not have jurisdiction or authority to modify the terms of the Agreement or to increase Defendants' payment obligations hereunder.

6.13 **Waivers, *etc.* to Be in Writing.** No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval. Any failure by a party to insist upon the strict performance by any other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

6.14 **When Agreement Becomes Binding; Counterparts.** This Agreement shall become valid and binding upon its complete execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all parties had signed the same instrument.

6.15 **Notices.** Notices required under this Agreement shall be in writing and shall be deemed given on the first business day following first-class mailing and facsimile transmission thereof. Notice hereunder shall be delivered:

To Plaintiffs:

Joseph Fitapelli
Fitapelli & Schaffer, LLP
28 Liberty Street 30th Floor
New York, NY 10005
(212) 300-0375; or

Louis Pechman
Pechman Law Group PLLC,
488 Madison Avenue, 17th Floor
New York, New York 10022
(212) 583-9500

To Defendants:

Andrew J. Urgenson, Esq.
OVED & OVED LLP
401 Greenwich Street
New York, NY 10013
(212) 226.2376

6.16 **Facsimile, Electronic and Email Signatures.** Any signature made and transmitted by facsimile, email, or other electronic means for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party who transmits the signature page by facsimile or email.

WE AGREE TO THESE TERMS.

ENMANUEL FERNANDEZ DE JESUS

05/23/2018
Date

By: _Enmanuel Fernandez_
Enmanuel Fernandez De Jesus

HENRY DE JESUS DEL CARMEN

05/23/2018
Date

By: _[signature]_
Henry De Jesus Del Carmen

INCINIA CONTRACTING INC.

5/15/2018
Date

By: _[signature]_
Name: DUSAN ZORIC
Title: PRESIDENT

INCINIA CORPORATION

5/15/2018
Date

By: _[signature]_
Name: DUSAN ZORIC
Title: PRESIDENT

ZORAN ZORIC

05/24/2018
Date

By: _[signature]_
Zoran Zoric

DUSAN ZORIC a/k/a SEAN ZORIC

5/15/2018
Date

By: _[signature]_
Dusan Zoric a/k/a Sean Zoric

16